IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GRANDMOTHER MOVIE, LLC, d/b/a | ) | |
| GRANDMOTHERS MURDER CLUB, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CAUSE NO. |
| vs. | ) | |
| | ) | |
| PARADE DECK FILMS, LLC, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| and | ) | |
| | ) | |
| MICHAEL INGRAM, a/k/a MICHAEL GORDON | ) | |
| INTRIERI, a/k/a MICHAEL OXENFELD, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HASSAN SHARIFF, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR BREACH OF CONTRACT, FRAUD AND CIVIL RICO VIOLATIONS

COMES NOW Plaintiff grandmother movie, LLC, d/b/a Grandmothers Murder Club, LLC, by and through its counsel of record, and for its cause of action against Defendants named herein, states as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

1.      Plaintiff grandmother movie, LLC, d/b/a Grandmothers Murder Club, LLC ("Licensor") is a Missouri limited liability corporation duly organized and existing at law.

2.      Defendant Parade Deck Films, LLC ("Parade Deck") is and was at all times mentioned herein a corporation duly organized and existing at law under the laws of the State of Arizona with its principle place of business in Arizona.  At all times relevant herein, Defendant

Parade Deck was doing business as a film distributor and promoter throughout the United States in general and in Missouri in particular.

3.        Defendant Michael Gordon Intrieri, a/k/a Michael Ingram, a/k/a Michael Oxenfeld ("Intrieri") is and was at all relevant times herein an individual residing in the State of Oregon, but doing business in all fifty (50) states, including Missouri, as a principal in Defendant Parade Deck and as a distributor and promoter of films.

4.        Defendant Hassan Shariff ("Shariff") is and was at all relevant times herein an individual residing in the State of Oregon, but doing business in all fifty (50) states, including Missouri, as a principal in Defendant Parade Deck and as a distributor and promoter of films.

5.        Defendants Intrieri and Shariff founded Defendant Parade Deck in the State of Arizona in 2010, with its principal place of business in Chandler, Arizona.  Defendant Parade Deck was formed by Defendant Ingram, using the name "Mike Intrieri," and Shariff for the purpose of distributing and promoting motion picture films throughout the United States.

6.        At the time of the formation of Defendant Parade Deck, Defendant Intrieri had been charged in 2004 in Maricopa County, Arizona, with several felonies, including fraudulent schemes and artifices, theft, forgery, computer tampering and taking the identity of another, after which he plead guilty to felony fraud and was placed on probation. At all times herein, Defendant Intrieri took steps to conceal his fraud conviction form Licensor, including by use of false names.

7.        On or about January 31, 2017, Licensor and Defendant Parade Deck entered into a distribution agreement (the "Agreement") under which Defendant Parade Deck, as distributor and promoter, would distribute and promote the film "Bad Grandmother" (the "Film") exclusively in the United States and Canada.  The Agreement was signed by Defendant Intrieri

using a false name, "Michael Ingram," as President of distributor Defendant Parade Deck.  The Agreement was also signed by Daniel M. Byington as Principal of Plaintiff Licensor.  With the exception of the signature page, each page of the Agreement was initialed by Defendant Intrieri as "Ingram" and Byington.  A copy of the Agreement is attached hereto as Exhibit A.

8.      Under the Agreement, exclusive distribution rights for the Film were granted by Licensor for viewing formats, theatrical, including among others, theatrical, digital VOD, cable VOD, iTunes, Google Play, in flight entertainment and television rights.

9.      The term of the Agreement was four (4) years.  Defendant Parade Deck agreed to spend no less than $10,000 on marketing, and Defendant Parade Deck agreed to pay Plaintiff Licensor, the following royalties:  85% on all digital formats, 90% on theatrical, 85% on cable, satellite and broadcast and free television and 90% on all international sales.

10.     The Agreement also provided in Section C (Xii) that Defendant Parade Deck as Distributor could only assign the rights it was granted in the Agreement "with the express written consent of Licensor."

11.     The Agreement also provided in Section C (vii) that Defendant Parade Deck would provide a statement of the distribution costs and any royalties due to Licensor quarterly following the film's first commercial release and continue quarterly reports thereafter.

12.     The Agreement also provided in Section C (viii) that Defendant Parade Deck would secure $75,000 in International Film sales within the first six months and $125,000 within 12 months.  If Defendant Parade Deck did not meet those goals, Plaintiff Licensor was given the ability to terminate or amend the Agreement.

13.     When Defendant Intrieri entered into the Agreement on behalf of Defendant Parade Deck as "Michael Ingram," he was purposefully concealing from Licensor and Byington

his true identity and the fact that Defendant Intrieri had a prior conviction for fraud. Had Licensor known that the company it was entering into a licensing and distribution agreement was run by a principal that had been convicted of fraud, Licensor would never have entered into the Agreement.

14.     Sometime after the execution of the Agreement on or about January 31, 2017, Defendant Intrieri forged or created, or caused to be forged or created, a false, fraudulent and forged copy of the Agreement (the "Altered Agreement") by modifying the terms of the original Agreement, but fraudulently attaching a copy of the signature page of the original Agreement to create the Altered Agreement. A copy of the Altered Agreement is attached hereto as Exhibit B. In the Altered Agreement, inspection reveals the concealed but fraudulent nature of the document. Such inspection of the Altered Agreement reveals:

(a)     The initials of Defendant Intrieri / Ingram and Byington do not appear on each page;

(b)     The size of the type is different on the Altered Agreement except for the last page bearing signatures;

(c)     Beginning on page 2, the provisions set forth on each page of the Altered Agreement do not match those on each page of the Agreement;

(d)     There is a substantial blank space on the penultimate page of the Altered Agreement that does not appear in the Agreement, that was necessary for the false, fraudulent Altered Agreement to have the same final signature page as the Agreement; and

(e)    The size of the type face on the signature page of the Altered Agreement matches the size of the type face in the Agreement, though it does not match the size of the type face on the other pages of the Altered Agreement.

15.    The Altered Agreement changes many of the substantive provisions of the Agreement, including but not limited to the following:

(a)    Section C (Xii) which prevents assignment without prior written consent of the Licensor has been eliminated altogether;

(b)    The items "Exempted" from "Rights Granted" was changed to eliminate DVD and Blu Ray as rights retained by Licensor;

(c)    Royalties payable to Licensor were altered to lower the royalties on Digital from 85% to 80%; on theatrical from 90% to 50%; on cable, satellite and broadcast and free television from 85% to 75%; and on international sales from 90% to 80%;

(d)    A "Returns Reserve" that was not present in the Agreement clause was added to the Altered Agreement that gave Defendant Parade Deck the right to hold back 20% of all DVD and Blu Ray gross income (Section C (i)(b)); and

(e)    The telephone number of Defendant Parade Deck was changed from 503-679-8443 to 503-481-1214.

16.    At some point after execution of the Agreement, and after Defendant Intrieri had forged or created, or caused to be forged or created the Altered Agreement, Defendants Intrieri and Shariff and/or Parade Deck utilized the Altered Agreement as a part of a scheme to defraud to have Defendant Parade Deck enter into a Distribution Agreement with Ruthless Films and its WOWNOW Entertainment Label ("Ruthless Films"), whereby Ruthless Films would act as distributor to promote and distribute motion pictures, including but not limited to "Bad

Grandmas." Said Distribution Agreement was entered into on or about June 6, 2017 between Defendant Parade Deck and Ruthless Films, which Distribution Agreement was amended and/or restated on at least one occasion, on or about October 10, 2017 (the "Second Distribution Agreement"). In the Second Distribution Agreement between Defendant Parade Deck and Ruthless Films, Defendant Parade Deck granted to Ruthless Films the exclusive right to advertise, market, distribute, license and sell films, including but not limited to "Bad Grandmas," worldwide, by any means, through any media, including by DVD and Blu Ray. Under the Distribution Agreement, Defendant Parade Deck granted a 25% commission to Ruthless Films for distribution of the Film on a worldwide basis.

17.    Defendants Parade Deck, Intrieri and/or Shariff sent the false and fraudulent Altered Agreement by electronic mail across state lines as a part of their scheme to create the Altered Agreement, utilize it online into an unauthorized relationship with Ruthless Films with royalty rates different and more favorable to Parade Deck than under the Agreement; and to obtain royalties from Blu Ray and DVD sales which were retained exclusively by Licensor.

18.    Defendants Intrieri, Shariff and/or Parade Deck created the Altered Agreement in order to (i) eliminate the non-assignability clause and allow them to assign distribution rights to a third party; (ii) to eliminate the exclusive rights to Blu Ray and DVD sales retained by Licensor; and (iii) decrease the royalties to Licensor, so it could obtain greater revenues from distribution of the Film than it could under the original Agreement.

19.    After the execution of the Agreement on or about January 31, 2017 and after the completion of the Film, Defendant Parade Deck, by and through Defendants Intrieri and Shariff, undertook to distribute the film, either by themselves or without the required permissions, through the Distribution Agreement with Ruthless Films. Defendants failed to secure $75,000 in

international film sales within the first six (6) months of the Agreement and failed to secure $125,000 within the first twelve (12) months, as guaranteed under Section C (viii) of the Agreement.

20.    In addition, Defendants failed to provide correct quarterly accounting statements as required by Section C (vii) of the Agreement.

21.    In the accounting statements that were provided by Defendants Parade Deck and Defendants revenues from several sources for the film that should have been reported were not reported, such as revenue from Red Box, substantial revenues that should have been included were omitted from their accounting statements for the second quarter of 2018 alone, the revenue sources from Red Box that were omitted was at least $46,750.  The accounting statements that omitted relevant revenue sources intentionally concealed the receipt of that revenue and said fraudulent accounting statements were sent by electronic mail across state lines.

22.    In the accounting statements that were provided by Defendant Parade Deck and Defendants, Defendant Parade Deck and Defendants computed royalty amounts using the formula in the forged Altered Agreement, rather than the royalty amounts in the original Agreement, leading to a substantial understatement of the amounts due to Licensor.  The accounting statements that used royalty rates from the Altered Agreement, intentionally concealed the existence of the forged Altered Agreement, and were fraudulent, and said fraudulent accounting statements were sent by electronic mail across state lines.

23.    In the accounting statements provided by Defendant Parade Deck and the Defendants, they deducted over $11,600 work of distribution expenses from revenues due to Plaintiff, though the Agreement places a ceiling of $3,500 on any such expenses.

24.     Upon information and belief, Defendant Parade Deck and Defendants have omitted revenues they have received from the distribution of the film "Bad Grandmas" upon which monies are owed to Licensor under the Agreement, that they have falsely and fraudulently failed to report to Licensor.

25.     When Licensor began to suspect that Defendant Parade Deck and Defendants had failed to report revenues and under reported revenues they had received from distribution of "Bad Grandma," Licensor made a demand by letter dated September 10, 2018 for an audit pursuant to Section C (vii) of the Agreement, which requires sixty (60) days notice.  Defendant Parade Deck and Defendants have failed to make their records available for inspection and copying, though demand has been made therefor.

26.     By letter dated September 21, 2018, Licensor exercised its option to terminate the Agreement, under Section C (viii) due to the undisputed fact that Defendant Parade Deck failed to secure international film sales of $75,000 in the first six (6) months and $125,000 within the first twelve (12) months.  As of that date, Defendant Parade Deck and Defendants lost all rights of any kind to distribute "Bad Grandma" and profit in any way from the film.  A copy of said Termination Letter is attached hereto as Exhibit C.

27.     Though Licensor had terminated the Agreement, and was due royalties at that time due to the false and fraudulent reporting of revenues and revenue sources from distribution of the film, Defendant Parade Deck and each of the Defendants continued to operate after September 21, 2018 as if the Agreement was in full force and effect, and had their attorney state by letter dated October 2, 2018 that Defendant Parade Deck would retain control of all elements of the film unless Licensor would agree to a settlement and mutual release.

28.     Demand has been made upon Defendant Parade Deck and Defendants that each of them comply with the terms of the Agreement, as set forth in detail herein, and they have failed to comply with the obligations under the Agreement.

### JURISDICTON AND VENUE

29.     This Court has subject matter jurisdiction under 28 U.S.C. §1331, as the case involves a federal statute, 18 U.S.C. §1961, et. seq., and under 28 U.S.C. §1332, as there is complete diversity of citizenship between the parties, and the matter in controversy exceeds $75,000 exclusive of interests and costs.

30.     This Court has subject matter jurisdiction over the Defendants under the Missouri long-arm statute, Mo.Rev.Stat. §506.500 because, among other reasons, the Defendants have transacted business, made and performed contracts and committed transactions in this State. Specifically, Defendants in undertaking to distribute the Film, and to collect revenues due and owing to Plaintiff under the Agreement, distributed the Film in the State of Missouri, entered into contracts for the distribution and exhibition of the Film in Missouri, and sponsored or caused to be sponsored the exhibition of the Film in Missouri, and collected revenues from the showing of the Film in Missouri.

31.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendants have breached duties to Plaintiff in this District, committed tortious and illegal acts in this District, and have made and performed under contracts substantially connected to this District; and under 18 U.S.C. §1965, as Defendants have transacted their affairs in this District.

### COUNT I
### (Breach of Contract – Parade Deck)

32.     Plaintiff realleges and incorporates by reference paragraphs 1 through 31 of the Complaint, as if fully set forth herein.

33.     Defendant Parade Deck, by its actions described herein, has breached its contract with Licensor by:

(a)     Failing to provide timely quarterly reports;

(b)     Failing to provide accurate quarterly reports;

(c)     Utilizing royalty rates from the Altered Agreement rather than from the Agreement;

(d)     Retaining revenues from DVD and Blu Ray sales to which it was not entitled;

(e)     Deducting expenses in an amount in excess of that allowed under the Agreement;

(f)     Failing to include and report in quarterly statements revenues from Red Box, Amazon, airlines and other sources; and

(g)     Failing to honor the termination of the Agreement and continuing to return rights to and derive revenue from the Film.

34.     Licensor has provided notice to breach and a demand for compliance with the Agreement, which has been ignored.

35.     Licensor has been damaged directly and proximately by the above-described breaches of the Agreement, and others that may be uncovered in discovery, in an amount in excess of $300,000.

WHEREFORE, Plaintiff prays for judgment against Defendants in an amount that is fair and reasonable and for its attorneys' fees and the costs of this action, and for such other and further relief as the Court deems proper and just under the circumstances.

## COUNT II
### (Fraud - Parade Deck, Intrieri, Shariff)

36.     Plaintiff realleges and incorporates by reference paragraphs 1 through 35 of the Complaint, as if fully set forth herein.

37.     Defendants Parade Deck, Intrieri and Shariff owed a duty to Plaintiff in dealing with third parties such as Ruthless Films not to misrepresent to third parties the nature of their relationship with Licensor, or to alter, forge or otherwise misrepresent the terms of Defendant Parade Deck's Agreement with Licensor.

38.     Defendants Parade Deck, Intrieri and Shariff owed a duty to Plaintiff to notify and apprise Plaintiff if it utilized the Altered Agreement or in any way failed to utilize the terms of the original Agreement in distributing, promoting and exhibiting the Film.

39.     Defendants Parade Deck, Intrieri and Shariff fraudulently and knowingly forged or created, or cause to be forged or created, the Altered Agreement, and fraudulently utilized the Altered Agreement in business dealings with third parties to distribute and promote the Film, to derive economic benefit therefrom, that it could not have obtained if it had not utilized the Altered Agreement.

40.     Plaintiff relied upon Defendants to utilize the terms of the Agreement in its dealings with third parties in distributing, promoting and exhibiting the Film.

41.     Defendants breach their duty to Plaintiff and defrauded Plaintiff by utilizing the Altered Agreement in distributing, promoting and exhibiting the Film.

42.     But for the above-described fraudulent conduct, Defendants Parade Deck, Intrieri and Shariff could not have obtained the same economic benefit that they did from use of the Altered Agreement.

43.     The above fraudulent conduct by Defendants has directly and proximately caused damage to Plaintiff, in an amount in excess of $300,000.

WHEREFORE, Plaintiff prays for judgment against Defendants in an amount that is fair and reasonable and for its attorneys' fees and the costs of this action, and for such other and further relief as the Court deems proper and just under the circumstances.

**COUNT III**
**(Accounting – Parade Deck)**

44.     Plaintiff realleges and incorporates by reference paragraphs 1 through 43 of the Complaint, as if fully set forth herein.

45.     Pursuant to the Agreement, Defendant Parade Deck was required to remit payments to Plaintiff pursuant to the terms of the Agreement for amounts due from the distribution and exhibition of the Film.

46.     Defendant Parade Deck has failed to remit to Plaintiff the amounts due and owing to Plaintiff under the terms of the Agreement, or even under the terms of the Altered Agreement.

47.     Defendant Parade Deck should be required to provide an accounting pursuant to the Agreement of all monies it has received or is entitled to receive from its distribution or any other action with regard to the Film, and then provide an accounting of the monies due to Plaintiff under the terms of the Agreement.

WHEREFORE, Plaintiff prays for Defendant Parade Deck to provide an accounting of all monies it has received, for judgment against Defendants in an amount that is fair and reasonable and for its attorneys' fees and the costs of this action, and for such other and further relief as the Court deems proper and just under the circumstances.

**COUNT IV**
**(Constructive Trust)**

48.     Plaintiff realleges and incorporates by reference paragraphs 1 through 47 of the Complaint, as if fully set forth herein.

49.     Defendants Intrieri, Shariff and Parade Deck have committed and participated in actual fraud by utilizing the Altered Agreement and using it to collect and withhold revenues due and owing to Plaintiff under the Agreement.

50.     The fraudulent conduct of Defendants has wrongfully deprived Plaintiff of its property, that is, monies due to it under the Agreement, such that a constructive trust should be declared and established by this Court for the gathering and depositing of all amounts due to Plaintiff and of which Plaintiff has been deprived due to Defendants' fraudulent conduct.

WHEREFORE, Plaintiff prays that this Court invoke its equitable powers to create a constructive trust to restore to Plaintiff the property wrongfully withheld by Defendants, and for such and other and further relief as the Court deems appropriate in the circumstances.

## COUNT V
## (Civil RICO Violations)

51.     Plaintiff realleges and incorporates by reference paragraphs 1 through 50 of the Complaint, as if fully set forth herein.

52.     The civil RICO aspect of this case is a civil action for RICO remedies authorized by 18 U.S.C. §1961, et. seq. for declaratory and injunctive relief and for actual, consequential and exemplary damages, and all other relief as this Honorable Court deems just and proper under all the circumstances.

53.     The cause of action involves a criminal enterprise engaged in a pattern of racketeering activity across state lines, and a conspiracy to engage in racketeering activity involving predicate acts over a period of years.

54.     The predicate acts here involve mail fraud and wire fraud, in which the altered, falsified and forged Altered Agreement was created and/or caused to be created, and then sent via the Untied States Mail and via use of the wires.

13

55.     Defendants Intrieri and Shariff operated Parade Deck as a criminal enterprise, in which terms of the Agreement were negotiated with Plaintiff pursuant to a written contract, the Agreement, and then the Defendants Intrieri and Shariff forged or created, or caused to be forged or created, a false, fraudulent and forged version of the Agreement which was then sent to third parties via the United States Mail or via the wires by e-mail or facsimile transmission, for the express purpose of altering financial terms of the Agreement, thereby converting to Defendants Intrieri, Shariff and Parade Deck monies that were the property of Plaintiff and did not rightfully belong to any of the Defendants.

56.     Defendants Intrieri, Shariff and Parade Deck with intent to defraud acted pursuant to a scheme or artifice to defraud for purposes of obtaining money or property by means of a false or fraudulent practice, representation or promise, sent the Altered Agreement via United States Mail and/or by way of interstate electronic communication by wire to a variety of business interests, including but not limited to Ruthless Films, in violation of 18 U.S.C. §1341 and 1343.

57.     Defendants Intrieri, Shariff and Parade Deck with intent to defraud acted pursuant to a scheme or artifice to defraud for purposes of obtaining money or property by means of a false or fraudulent practice, representation or promise utilized the Altered Agreement to place the Film in a variety of outlets for distribution and exhibition throughout the United States, including theatre performances in St. Louis and elsewhere, and retail outlets such as Wal-Mart, Target and with companies such as Stadium Media, in violation of §1341 and 1343.

58.     The operation of the above-referenced criminal enterprise and the illegal predicate acts of Defendants directly and proximately caused and was the substantial and foreseeable direct cause of a substantial concrete financial loss and injury, to Plaintiff, in an amount not less than $300,000 and possibly in excess of that amount.

59.     The Defendants did cooperate jointly and severally in the commission of two or more predicate acts as outlined above, such predicate acts outlined in 18 U.S.C. §(1961(H) and (B) and in violation of 18 U.S.C. §1962(b).

60.     Plaintiff has been injured in its business and property by virtue of Defendants' violation of 18 U.S.C. §1962, such that Plaintiff is entitled to receive threefold the damages it has sustained and the costs of suit, including a reasonable attorney's fee, pursuant to 18 U.S.C. §1964(c).

WHEREFORE, Plaintiff prays for judgment against Defendants in an amount that is fair and reasonable, for threefold damages pursuant to 18 U.S.C. §1964(c), and for its reasonable attorneys' fees and the costs of this action, and for such other and further relief as the Court deems proper and just under the circumstances.

Respectfully submitted,

**BUCHANAN, WILLIAMS & O'BRIEN, P.C.**

 /s/ James V. O'Brien
James V. O'Brien, MO Bar #31161
Andrew S. Buchanan, MO Bar #53824
2240 S. Brentwood Blvd.
Brentwood, MO 63144
Telephone:  314-862-6865
Facsimile:  314-726-6488
E-Mail:     jobrien@bwoattorneys.com
            abuchanan@bwoattorneys.com

*Attorneys for Plaintiff*